PEOPLE ex rel. CHAMBERLAIN v. KNOX et al.

(Supreme Court, Appellate Division, First Department.	December 8, 1899.)

1. MUNICIPAL CORPORATIONS—OFFICERS — POLICE CLERK'S ASSISTANT — CIVIL SERVICE APPOINTMENTS—VALIDITY.

Laws 1899, c. 370, regulating state civil service, abrogated prior civil service laws, and provided (section 7) that no person should be selected for appointment to a civil service office except in accordance with the provisions of that act. *Held*, that the appointment of a police clerk's assistant, made after the act took effect, but before rules and regulations for appointments thereunder were made, was invalid.

2. SAME—TRIAL—QUESTION FOR THE COURT.

Laws 1899, c. 370, provides that appointments from a competitive class of applicants for public offices shall be made only after the applicant has secured a certificate of proficiency from the civil service commissioners, and that applicants belong to the competitive class when the position to which they are to be appointed is such that the merit of the applicant can be determined by competitive examination. *Held*, that whether an applicant for an office of a certain class belonged to the competitive class was a question of law to be determined by the court.

3. SAME—OFFICE—CLASSIFICATION—POLICE CLERK'S ASSISTANT.

The office of police clerk's assistant of the city of New York is an office of the competitive class, within Civil Service Laws 1899, c. 370, providing that applicants to civil service offices belong to the competitive class when the position to which they seek appointment is such that the applicant's merit can be determined by competitive examination.

Appeal from special term, New York county.

Mandamus by the people, on relation of William J. Chamberlain, against Charles H. Knox and others, civil service commissioners, to compel the issuance of a civil service certificate to relator. From an order granting a peremptory writ, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Theodore Connoly, for appellants.
Julius M. Mayer, for respondent.

RUMSEY, J. On the 26th day of June, 1899, the board of city magistrates of the First division of the city of New York appointed the relator a police clerk's assistant, to take effect July 1, 1899; and he qualified and entered upon the performance of his duties as such, and continues to perform them. He received no pay for the months of July, August, or September. The appellants, who compose the municipal civil service commission of the city, refused to issue to him a certificate that he had been appointed or employed in pursuance of law, and of the civil service rules made in pursuance of law, which it is thought is a necessary prerequisite, under chapter 370 of the Laws of 1899, to his receiving such payment. The relator moved at special term for a peremptory writ of mandamus to compel the civil service commissioners to issue such certificate. In his petition the following facts were made to appear: The law went into effect on the 19th day of April, 1899, but no civil service rules or regulations for the city of New York were made as directed by it until the 11th day of July, 1899. Between April 19, 1899, and July 11, 1899, there had not been any rules or regulations or classi-

fications for appointments or promotions in the civil service of the city of New York established with the approval of the governor or the state commission. From a time before April 19, 1899, up to and after July 11, 1899, there was not any merit or eligible list of persons examined prior to the passage of chapter 370 of the Laws of 1899, under the civil service rules and regulations in force, if any were in force; and neither on June 26, 1899, nor July 1, 1899, was there any merit or eligible list of persons examined at any time for the place of police clerk's assistant, and no such list was in existence, nor was there any list nearly approaching or appropriate to it, from which appointments could be made. The motion for mandamus was granted, and from the order granting it this appeal is taken.

We have not found it necessary, upon the consideration of this case, to determine all the questions presented to us in the argument. Our conclusion is that the relator was not lawfully appointed to the position he holds, and therefore he is not entitled to this certificate. Our reasons for this conclusion will be shortly stated:

Chapter 370 of the Laws of 1899, regulating the civil service of the state and of all the municipalities in it, became a law on the 19th of April. At that time a civil service commission was existing in the city of New York, and rules and regulations for the civil service had been made in that city; but such rules had not been approved by the governor, nor by the state civil service commission, and there was some doubt whether these rules were in existence even before the passage of the act, and still greater doubt whether they were in existence after the act became a law. Laws 1899, c. 370, § 28. If they were in force at this time, it is conceded that the relator's appointment was not made as required by those rules, and therefore it could not be valid. But, if they were not in force, his status is not changed. By section 7 of the law just cited, it is provided that "any officer or officers having the power of appointment shall select no persons for appointment except in accordance with the provisions of this act, and the rules and regulations prescribed thereunder." That provision prevented any appointment until such time as the rules and regulations required by the act should have been established. The fact that the former rules had been abrogated, and that there were in existence no rules regulating the appointment of civil officials in the city of New York, did not, therefore, give a free hand to every person who had occasion to make appointments after the passage of the act, and before the establishment of the rules. The act itself prescribed what officers shall be within the unclassified service (section 8); and it also prescribes what classes shall be included in the "classified service," as it is called. The competitive class, which is one of those into which the classified service is divided, includes all positions in which it is practicable to determine the merit and fitness of the applicant by competitive examination. Section 13. Whether it is practicable in any given case, where the nature of the duties to be performed is apparent, is a question of law to be decided by the court. Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809. There can

be no doubt what is the nature of the duties of a police clerk's assistant, or that the position is one for which it is practicable to determine the merit and fitness of the applicant by competitive examination. In fact, this particular position was in the competitive class under the old rules, and it is very clear that under the provisions of the statute it remains in that class. Vacancies in positions in that class can be made under this law only by appointment of those graded highest in a competitive examination conducted by the municipal commission. Section 13. But there were no lists at the time this appointment was made. As we have seen, there could be no appointments after the passage of this act, except ones made in accordance with its provisions and the rules and regulations made under it. The effect of this provision was that, until rules and regulations had been made, it was not legal to make appointments to any position which by the statute was placed in the competitive class. It is said that such a construction would prevent all appointments until the members of the municipal commission, having been selected by the mayor, should establish the rules and procure their approval, and that the effect of this requirement would be to put the whole civil service at the mercy of the commissioners, and destroy it, if they do not see fit to perform their duty. Undoubtedly, that would be true if the statute had not made some provision for cases where the public welfare required that any office should be filled. But, if there were no such provision in the statute, the possibility that some official of the state might throw the public service into disorder by refusing to perform his duties affords no reason why the statute should not have its ordinary and natural construction. Such a possibility always exists, but the presumption is that a public official will do his duty, and all statutes are passed and are construed upon that theory. But in the case of this statute the legislature evidently had in view a possibility that exigencies might arise making it necessary to fill a vacancy in the competitive class before the machinery provided by the statute should be in working order, and they provided for such cases in section 14 of the act. That section, taken in connection with section 7, which has been quoted above, and those of section 13, furnish a complete system for the filling of appointments from the time of the passage of the act until the rules and regulations have been established, and an eligible list has been provided. If it is necessary to make an appointment in the competitive class before these rules and regulations are made, it must be done in accordance with section 14, and, unless it is so done, the appointment is not valid; and the only remedy, if he has any, which a person taking under that invalid appointment would have, is the one given him by section 7 of the act. This conclusion renders it unnecessary to consider the other questions discussed upon the argument.

For the reason, therefore, that the appointment was invalid, the special term erred in directing a writ of peremptory mandamus to issue; and its order must be reversed, and the writ denied, but, under the circumstances, without costs. All concur.