reasons, therefore, the order was erroneous and must be reversed, with costs and disbursements, and the writ denied, with ten dollars costs.

Vᴀɴ Bʀᴜɴᴛ, P. J., Pᴀᴛᴛᴇʀsᴏɴ and O'Bʀɪᴇɴ, JJ., concurred; Iɴɢʀᴀʜᴀᴍ, J., concurred on first ground.

Order reversed, with costs and disbursements, and writ denied, with ten dollars costs.

─────────────

Tʜᴇ Pᴇᴏᴘʟᴇ ᴏғ ᴛʜᴇ Sᴛᴀᴛᴇ ᴏғ Nᴇw Yᴏʀᴋ ex rel. Wɪʟʟɪᴀᴍ H. Kᴀs-ᴛᴏʀ, Appellant, v. Hᴇɴʀʏ S. Kᴇᴀʀɴʏ, Commissioner of Public Buildings, Lighting and Supplies of the City of New York, Respondent.

*Civil service in New York city — right of removal during the probationary period — a peremptory discharge is invalid.*

A person appointed to a position in the civil service in the city of New York for the probationary period prescribed by the civil service rules of that city, adopted pursuant to sections 123 and 124 of the Greater New York charter (Laws of 1897, chap. 378) occupies, so far as the right to remove him during that time is concerned, the same position as a permanent employee; and the provision of section 35 of the rules to the effect that, during his probationary period, he may be peremptorily discharged, is invalid.

Aᴘᴘᴇᴀʟ by the relator, William H. Kastor, from an order of the Supreme Court, made at the New York Special Term bearing date the 28th day of December, 1899, and entered in the office of the clerk of the county of New York, denying his motion for a peremptory or alternative writ of mandamus directing Henry S. Kearny, commissioner of public buildings, lighting and supplies of the city of New York, to reinstate the relator in the position of clerk in said department, with the salary due from the date of his removal.

*Julius M. Mayer*, for the appellant.

*Theodore Connoly*, for the respondent.

Rᴜᴍsᴇʏ, J. :

The relator having passed a competitive examination for the place of senior clerk bookkeeper was the first on the eligible list of the

municipal civil service commission for that place, and on the 12th of June, 1899, he received an appointment to the place of senior clerk in the department of public buildings, lighting and supplies, taking effect June 13, 1899, with a salary at the rate of $1,000 a year. He entered upon the performance of his duties, but on the seventeenth of June he was notified that he was no longer required and was discharged. On the nineteenth he demanded to be reinstated because he had been wrongfully removed without being afforded an opportunity to make an explanation. This demand was refused and he then made application for reinstatement by mandamus, which was denied, and from the order of denial this appeal is taken.

The White Law, so called, had gone into effect on the 19th of April, 1899, and was applicable to the city of New York. No rules had been made as required by that statute, but before that time rules had been made in accordance with the provisions of sections 123 and 124 of the charter, and it was assumed by the parties to this proceeding that these rules were in force at the time of the relator's removal. We shall concur in that assumption without further consideration of the point.

The case of *People ex rel. Chamberlain* v. *Knox* (45 App. Div. 518) did not determine that the rules in existence at the time of the passage of the White Act had been abrogated. The question was not presented. The relator in that case, who was not upon any eligible list, claimed that he had been properly appointed because the rules in force at the time of passage of the act had been abrogated and no other rules had been made. It was quite clear in that case that if these rules were in force his appointment was invalid; and the discussion was directed to showing that even if his contention was correct his appointment was, nevertheless, invalid. Nothing was decided and it was not necessary to decide anything as to the validity of those rules. Section 35 of these rules provided that all employees in positions under any of the schedules contained in these rules, except Schedule G, shall be provisional, and that such provisional service shall continue for six months except in Schedule C, where it shall be one month, during which period the person so employed may be peremptorily discharged from service. The relator was in neither

Schedule G nor C, and his provisional period was, therefore, six months. He claims that when he was appointed he became a regular clerk for a probationary period of six months, and that he was secure in his position during that probationary period unless he was removed in the manner provided in section 1543 of the charter, after he had been allowed an opportunity to explain, and as this opportunity had not been allowed his removal was unlawful. He insists that so much of section 35 as prescribes that, during the probationary period, a person so employed might be peremptorily discharged, was beyond the power of the civil service commission to make. In that we agree. Their power is in this matter derived from section 124 of the charter, which authorizes them to provide for a period of probation before an appointment or employment is made permanent; but there is no power given them, after having prescribed the probationary period, of authorizing the peremptory removal during that period. Whatever rights existed during that period were the rights the statute granted, and no other.

The question, therefore, is whether the statute gives to the head of a department the right to arbitrarily remove a person who has been appointed in his department during the probationary period.

*People ex rel. Sweet v. Lyman* (20 Misc. Rep. 80; 30 App. Div. 135; 157 N. Y. 368) is not an authority for the respondent. The case in the Court of Appeals did not turn upon any such point. In the Appellate Division it was said upon the dismissal of the motion for a reargument: "'The relator was not removed from any position. He was properly and legally appointed to the position of special agent for three months, and at the expiration of his term the State Commissioner of Excise declined to make an absolute appointment. * * * We are of opinion that the relator has not been removed from a position or employment within the meaning of chapter 821, Laws of 1896, and, hence, that the order should be affirmed, with costs.' The above quotation shows what was intended to be decided." So far as any inference is to be drawn from what is said in that case, it is that the probationary period for which Sweet was appointed was a fixed term, and to that extent the opinion supports the contention of the relator here. The question then is whether the probationary period affords to the appointed person a fixed time during which he may familiarize

himself with the duties of his position ; become acquainted with his head and the other persons with whom he has to work ; affords an opportunity for the head and the other persons to become acquainted with him and to ascertain fully his fitness for the position, and whether or not upon the whole he is likely to be a desirable officer ; or whether, on the other hand, the head of the department appointing him may at once remove him without giving any excuse or reason.

The object of the probationary period is twofold. In the first place it is to enable the head of the department who has made the appointment not only to ascertain the fitness of the probationer, but to learn whether on the whole he is a satisfactory and agreeable person to have serve in the position and one who will become a reasonably efficient officer. It is well known that a man, although he may be competent, may not be efficient for reasons which, though they affect his efficiency, may not constitute a good cause for his removal which can be expressed ; either because of his slowness of apprehension, his laziness or dilatoriness. He may be efficient, and yet because of his personal habits, infirmities of temper or want of tact, he may be an exceedingly undesirable person to have in the place to which he has been appointed. The appointment for the probationary period is given to enable the head to satisfy himself in regard to all these matters. But it is also given for the benefit of the appointee to some extent. However able he may be ; however willing he may be ; the position may be one which requires considerable knowledge of these duties to enable him to perform them ; and his probationary period is given to him to enable him to familiarize himself with these duties so that after becoming acquainted with them he will be able to perform them. One of these objects is just as important as the other, and, therefore, a man who has been appointed for the probationary period should be entitled to remain during that period in order to enable him to fit himself for the performance of his duties. While this has not been determined by any adjudication in regard to the matter, yet the converse of the proposition is established in one case in this department in which it was held that a policeman who had received a probationary appointment was entitled to a trial by unprejudiced commissioners before he could be removed during that time. (*People ex rel. McMorrow* v. *Roosevelt,*

23 App. Div. 533.)   In that case a member of the police force, during his probationary period, was tried for conduct unbecoming an officer and dismissed.   Upon certiorari it was held that the trial was irregular, and the proceedings were annulled and he was reinstated. In *Matter of Murray* (18 App. Div. 337 ; affd., 155 N. Y. 628) it was held that the appointment of a policeman for the probationary period did not entitle him to be reappointed at the end of that period unless the commissioner saw fit to do so ; but it was said in that opinion that during that period an officer could only be removed upon conviction of some dereliction of duty after trial before a commissioner.   It is almost a necessary result of the determination in the first case, and it may fairly be inferred, from what is said in the second case above, that when one is appointed to an office for the probationary period he is in possession of his office for the term of his probation in precisely the same manner and to the same extent as though he had received a permanent appointment, the only exception being that his term of office expires at the end of the probationary period, and he is out of office unless he is reappointed.

The law of 1899 (Chap. 370, § 8) speaks of the probationary period as a probationary " term " not exceeding the time fixed by the rules. It seems to us that the true construction of the statute is that a probationary term may be provided during which the appointee should be entitled to hold his office as a regular appointee for that time within which he cannot be discharged except for cause ; but if the appointing power does not see fit to reappoint him at the end of that time, his employment ceases.   That being so, the relator's removal was not justified by the statute and was not legal, and he is entitled to the writ asked for and to be reinstated.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Order reversed, with costs and disbursements, and motion granted, with fifty dollars costs.