(36 Misc. Rep. 717.)

### PEOPLE ex rel. KASTOR v. KEARNY, Com'r.

(Supreme Court, Special Term, New York County.   January, 1902.)

1. MUNICIPAL CORPORATIONS—PROBATIONARY CLERK—DISMISSAL.

Greater New York Charter, § 124, treating of regulations by the municipal civil service commissioners, provides for a period of probation before employment is permanent. Rule No. 35 of the commission provides that all probationary employments shall continue six months. City Charter, § 1543, provides that no regular clerk shall be removed unless he is allowed an opportunity for an explanation. *Held*, that if an appointing officer is dissatisfied with a regular employé during the probationary period, and desires to dispense with his services without preferring charges against him, it can only be done on the day of the expiration of his probationary period.

2. SAME—HEARING.

Where the probationary period, though intermittent because of illegal discharges in the meantime, exceeds six months, the appointing officer can only discharge the clerk after a hearing and an explanation, as his appointment has become permanent.

Application by the people, on the relation of William H. Kastor, for a writ of mandamus to Henry S. Kearny, commissioner of public buildings.   Writ granted.

Mayer & Gilbert, for relator.

George L. Rives, Corp. Counsel (William B. Crowell, of counsel), for respondent.

SCOTT, J.   The relator was appointed senior clerk in the department of public buildings, lighting, and supplies of the city of New York on June 12, 1899, commencing the performance of his duties on the following day.   On June 17th he was discharged summarily, without charges or an opportunity to be heard.   He brought proceedings for reinstatement, and, after a determination in his favor by the court of appeals (58 N. E. 14), was reinstated on October 23, 1900.   On January 21, 1901, he was again discharged as of that date. On January 30, 1901, he was notified that the position he held would be abolished and his services dispensed with on January 31, 1901; and on February 1, 1901, he was informed by the respondent that the letter of January 30th, announcing the abolition of the office, was the governing notice of dismissal, and that salary would be paid for the whole month of January.   Proceedings for reinstatement were again instituted, resulting in an order under which the relator was again reinstated in office on May 24, 1901.   On August 13, 1901, the relator was notified that the probationary term of six months for which he was appointed as senior clerk would expire on August 20th, and that his services would not be required after that date.   He again seeks reinstatement.

Section 124 of the Greater New York charter, treating of regulations to be made by the municipal civil service commissioners, provides that:

"Such regulations shall among other things, provide  *  *  *  for a period of probation before an appointment or employment is made permanent."

Pursuant to this direction the civil service commission had adopted, and there was in force, at the time of the relator's appointment, a rule (No. 35) which, as far as applicable to the question now presented, reads as follows:

"All employments in positions under any of the schedules, except Schedule G, shall be provisional, and such provisional service shall continue six months. * * * If during that period (subject as to policemen and firemen to regulation 55) the conduct and character of the appointee are found satisfactory to the appointing officer, he shall at the close thereof receive an appointment, but otherwise his employment shall cease."

The relator, being a regular clerk, was protected by section 1543 of the charter, which provides that no regular clerk or head of a bureau shall be removed "until he has been allowed an opportunity of making an explanation," which implies that removal must be upon charges. It has been held by the court of appeals that this section applies to a clerk while serving his probationary period. People v. Kearny, 164 N. Y. 64, 58 N. E. 14. And it applies, of course, after his appointment becomes permanent. It follows that if an appointing officer is dissatisfied with an employé, and desires to dispense with his services, without, however, preferring charges against him, there is just one day upon which he can do so, and that is upon the expiration of the probationary period. The precise question involved in this application is, then, when, as to the relator, the probationary period ended,—whether it was at the expiration of six calendar months from the date of his first appointment, or after he had actually performed the duties of his office for the number of days which, when added together, would amount to six months of actual service. This question does not seem to have been decided by any appellate court. In People v. Coler, 56 App. Div. 171, 67 N. Y. Supp. 652, a clerk who was serving a probationary term was removed three days before that term ended. A writ of mandamus directing his reinstatement was issued at special term, and, of course, was so issued after the probationary term had expired. The appellate division said:

"The effect of this writ is not to reinstate the relator as a probationary appointee, but to constitute him a permanent employé, with full right to the position and the emoluments thereof."

The implication from this sentence is that the writer of the opinion conceived that the probationary period was not suspended during the days that the relator in that case was prevented by his discharge from actually performing the duties of his position. The decision of the case did not, however, turn upon that question, and it cannot, therefore, be said that the court decided it.

In People v. Guilfoyle, 61 App. Div. 187, 70 N. Y. Supp. 442, the court expressly declined to pass upon the question. There the relator had also been discharged before the expiration of the probationary period, and reinstated by order of the special term after that period had expired. The court said:

"It is not necessary, however, that we now determine just what the status of the relator would be if he were presently reinstated, as we think this order must be reversed on the ground of laches in making application for reinstatement."

At first reading, it would seem that the rule establishing a period of probationary service provides for a continuous term or period of 6 months, disregarding days on which, for one cause or another, the employé does not actually perform the duties of his position. But even if, as the respondent insists, there must be excluded the times during which the relator was prevented by reason of his successive unlawful removals from performing the duties of his office, still it appears that he was actually employed more than 6 months. The respondent computes the 6-months service by assuming that 182½ days (being half the number of days comprised in a year) constitute the period of 6 months contemplated by the regulation;—a method of computing time, it may be said, in passing, not authorized by the statutory construction law (Laws 1892, c. 677). He then computes that the relator served from June 13, 1899, to and including June 17, 1899, the date of his first removal, being 5 days; from October 26, 1900, to and including January 21, 1901, assumed to have been the date of his second removal, being 88 days; and from May 24, 1901, to and including August 20, 1901, the date of his last removal, being 89 days. These aggregate 182 days. The respondent appears to have overlooked the fact of the second removal. He did in the first instance undertake to remove the relator as of January 21, 1901, but on January 30th served on him a second notice of removal, to take effect on January 31st, and on February 1st addressed him a letter which referred to the letter of January 30th, and stated that it was the governing notice of dismissal. This amounted to a revocation of the attempted dismissal of January 21st. Even then, if the periods under which the relator was debarred from rendering service because of attempted removals be taken into account in computing his probationary service, it appears that his actual service was 192 days, or 10 days more than 6 months, even upon the somewhat doubtful method of computation adopted by the respondent. In any aspect of the case, it appears that the relator had served for more than 6 months when the third attempt was made to remove him. By that time his appointment had become permanent, and he was no longer subject to summary dismissal. The motion must be granted, and the writ issue.

Motion granted, and writ issued.